Memorandum of Decision
On December 29, 1998, the Department of Children and Families (DCF) filed a petition to terminate the parental rights of Kristen K. and John S. to their minor son, Emmanuel K. On September 24 and October 1, 1999, a trial of the termination petition took place in this court. For the reasons stated below, the court grants the termination petition.
FACTS
The court finds the following facts and credits the following evidence. Emmanuel was born on October 11, 1996. His mother, Kristen K., was unable to care for Emmanuel due to her homelessness and unemployment. The putative father, John S., has never acknowledged paternity and has had no contact with his son or with DCF. DCF obtained temporary custody of Emmanuel on October 18, 1996.[2]
On December 9, 1996, the court adjudicated Emmanuel neglected CT Page 14533 but returned him to his mother's custody under DCF protective supervision. A doctor diagnosed Emmanuel with the condition of failure to thrive. Emmanuel received services from Birth to Three until he became on target developmentally.
DCF made several attempts to engage the mother in individual counseling to address apparent mental health issues. The mother refused all services, stating that she did not need counseling or a therapist. The mother also refused to accept DCF referrals to job training, housing assistance, and parenting classes. The mother was evasive with DCF regarding her enrollment in services, her address, and the father's identity and whereabouts. On September 5, 1997, Emmanuel returned to DCF custody as a result of a second temporary custody order. DCF placed Emmanuel in the foster home where he remains today.
The mother did visit Emmanuel regularly and, for a while, the visits went well. At some point, however, the mother began to exhibit odd behaviors such as hovering over Emmanuel or taking food from his lunch bag. After some of the visits, Emmanuel acted aggressively when he returned to day care. The mother failed to keep appointments with DCF, usually scheduled for before or after the visits, to discuss her case and did not raise the subject of Emmanuel's development on her own.
On or about February 25, 1998, the court, pursuant to a DCF petition, terminated the mother's rights to her older son, Martin.[3] DCF filed its termination petition in this case on December 29, 1998. As recently as January, 1999, the mother was still homeless and unemployed.[4] On March 9, 1999, the court found that further efforts to reunify, Emmanuel with his parents were not appropriate. Accordingly, in April, 1999, DCF suspended the mother's visitation with Emmanuel.
The father failed to appear for either day of trial. DCF arranged with the mother for a taxi to transport her to court for the first day of trial, but the mother failed to appear for the taxi. The mother did appear for the second day of trial.
The mother participated in psychological evaluations in 1996 and 1997 and in a psychiatric evaluation with Dr. Richard Sadler in 1997.[5] The mother failed to appear for a second psychiatric examination scheduled in August, 1999. Dr. Sadler did not make a formal diagnosis, but felt that the mother's judgment was impaired and that she demonstrated symptoms of a schizotypal CT Page 14534 personality disorder.[6] In Dr. Sadler's opinion, the mother's impairment would adversely affect her ability to serve as a satisfactory parent for a child. Dr. Sadler recommended further counseling or psychotherapy but acknowledged that there is no clear method of treatment for the mother's condition because the mother persists in believing that there are no problems with her mental health or with her care taking.
Emmanuel has progressed well in his current foster home. He has bonded with his foster mother and with her biological child. Emmanuel enjoys visits with his brother Martin, which visits have been arranged by the children's foster parents. Emmanuel's foster mother did not testify but nonetheless has expressed a strong interest in adopting him.
TERMINATION ADJUDICATION
A. Reunification
In order to terminate parental rights, DCF must initially show by clear and convincing evidence that DCF "has made reasonable efforts to locate the parent and to reunify the child with the parent, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts." General Statutes § 17a-112(c)(1).[7] The court need not make such a finding, however, "if a court has determined at a hearing pursuant to subsection (b) of section 17a-110 or section17a-111b [dealing with permanency planning for committed children] that such efforts are not appropriate." General Statutes § 17a-112(c)(1). As stated, the court made such a finding on March 9, 1999.
B. Statutory Grounds
To prevail in a nonconsensual termination of parental rights case, DCF must also prove by clear and convincing evidence that one of several statutory grounds for termination exists. See Inre Michael B., 49 Conn. App. 510, 512, 714 A.2d 1279, cert. denied, 247 Conn. 919, 722 A.2d 807 (1998); General Statutes §17a-112(c)(3). In this adjudicatory phase, the court is limited to events preceding the filing of the petition or the latest amendment. See Practice Book § 33-3(a).
There being no amendments to the petition, the adjudicatory date in this case is December 29, 1998. DCF has alleged the CT Page 14535 grounds of abandonment, failure to rehabilitate, and lack of an ongoing parent-child relationship against the father. The evidence is clear and convincing that the father, by his complete absence from Emmanuel's life, has abandoned him in the sense that he has "failed to maintain a reasonable degree of interest, concern, or responsibility as to the welfare of the child." General Statutes § 17a-112(c)(3)(A). In view of this finding, and the lack of affirmative evidence, in the social study or elsewhere, against the father concerning the grounds of failure to rehabilitate and ongoing parent-child relationship, the court does not find DCF to have proven the latter two grounds.
Against the mother, DCF alleges two versions of the ground of failure to rehabilitate. The first version arises when "the parent of a child who has been found by the Superior Court to have been neglected or uncared for in a prior proceeding... has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child." General Statutes § 17a-112(c)(3)(B)(1). The second version arises when "the parent of a child under the age of seven years who is neglected or uncared for, has failed, is unable or is unwilling to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child and such parent's parental rights of another child were previously terminated pursuant to a petition filed by the Commissioner of Children and Families." General Statutes § 17a-112(c)(3)(E).
The elements that separate these two versions of failure to rehabilitate are not in issue in this case. No dispute exists that the court adjudicated Emmanuel neglected on December 9, 1996, thus satisfying the unique element of the General Statutes § 17a-112(c)(3)(B)(1). There is similarly no dispute that, under General Statutes § 17a-112(c)(3)(E), Emmanuel is "under the age of seven years," is "neglected or uncared for" (by virtue of the prior adjudication as well as the evidence), and that the mother's "parental rights of another child were previously terminated pursuant to a petition filed by the Commissioner of Children and Families." General Statutes § 17a-112(c)(3)(E).[8]
The only disputed element of the two failure to rehabilitate provisions is the one they have in common. This element requires CT Page 14536 the court to find whether the parent has "failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child." General Statutes §§ 17a-112(c)(3)(B) and17a-112(c)(3)(E).[9] This language requires the court to analyze the parents' rehabilitative status "as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable "within a reasonable time.'" In re Luis C.,210 Conn. 157, 167, 554 A.2d 722 (1989). The statute, however, does not require parents to "be able to assume full responsibility for [a] child, unaided by available support systems." In re JuvenileAppeal (84-3), 1 Conn. App. 463, 477, 473 A.2d 795, cert. denied,193 Conn. 802, 474 A.2d (1984). Because of the requirement that the court predict what will happen within a "reasonable time" after the filing of the termination petition, it is sensible to conclude that the court can consider not only the parents' conduct before the filing of the termination petition, but also the conduct occurring after it.
The evidence against the mother is clear and convincing. She has refused housing assistance, job training, and parenting classes, for all of which she had an obvious need. Despite her mental health problems, she has declined to accept counseling. Her impaired judgment and her awkward relationship with Emmanuel during the adjudicatory period inspires no confidence that she can assume a responsible position in his life in the foreseeable future. The mother has not assembled any of the ingredients of a plan for being a parent to Emmanuel in the future. DCF has accordingly proven both subsections of failure to rehabilitate.
DISPOSITION
In the dispositional phase of a termination case, the court must consider whether DCF has proven by clear and convincing evidence that "termination is in the best interest of the child." General Statutes § 17a-112(c)(2). The court can consider all events occurring through the close of the dispositional hearing. Practice Book § 33-5.
The best interest of Emmanuel K. clearly and convincingly requires termination of the parental rights of his father and mother. The father has abandoned his child and has no relationship with him. The mother has failed to rehabilitate during the adjudicatory period. A court has terminated her CT Page 14537 parental rights to another child. After the adjudicatory period, she missed a psychiatric evaluation and did not attend the first day of trial. Most importantly, she has not addressed any of her underlying mental health, homelessness, and parenting problems.
In the meantime, Emmanuel has thrived in the foster home. He has become a part of the foster family while retaining a relationship with his biological brother. The foster mother's plan to adopt Emmanuel would give him the permanency to which he is entitled after over two years of foster care. To implement this plan, termination of Emmanuel's parental rights is necessary and fully appropriate.
In arriving at a decision, the court must consider and make written findings regarding seven factors set out in General Statutes § 17a-112(e). See In re Tabitha P., 39 Conn. App. 353,362, 664 A.2d 1168 (1995). A discussion of these factors with regard to the mother follows. With regard to the father's case, the only finding that can be made is that he never made himself available for the court to impose expectations, for DCF to offer services, or for any other information about him to become known.
1) The timeliness, nature and extent of services offered, provided and made available to the parent and child by an agency to facilitate the reunion of the child with the parent.
Based on the foregoing discussion, the court finds that DCF provided foster care for Emmanuel, arranged for visitation by the mother, and made or attempted to make referrals to address the mother's employment, housing, mental health, and parenting problems. These services were relevant to the mother's needs and were offered in a timely manner.
2) Whether DCF has made reasonable efforts to reunite the family pursuant to the federal Adoption Assistance and Child Welfare Act of 1980.
Based on the foregoing discussion, the court finds that DCF offered the mother appropriate services and guidance, and sufficient time to permit family reunification.
3) The terms of any applicable court order entered into and agreed to by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order. CT Page 14538
On December 9, 1996 and January 6, 1998, the court entered the following expectations for the mother to meet: (1) keep all appointments set by or with DCF, (2) keep whereabouts known to DCF and your attorney, (3) participate in parenting and individual counseling, 4) participate in a psychological and psychiatric evaluations, and follow recommendations, 5) sign releases as requested, 6) secure and maintain adequate housing and income, 7) no substance abuse, and 8) no involvement with the criminal justice system, and 9) (in December, 1996 only) participate with parent aide and visiting nurse services. The mother complied with some of the expectations, principally keeping visitation appointments, but failed to comply with the material expectations of keeping her whereabouts known, obtaining mental health counseling, and securing adequate housing and income. As detailed above, DCF substantially met its obligation to provide assistance.
4) The feelings and emotional ties of the child with respect to his parents, any guardian of his person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties;
As stated above, Emmanuel is bonded to his foster family. He has no significant emotional ties to his mother.
5) The age of the child.
Emmanuel is three years old.
6) The efforts the parent has made to adjust his circumstances or conditions to make it in the best interest of the child to return him to his home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child.
Based on the foregoing discussion, the court finds that the mother visited Emmanuel regularly but made no other efforts to adjust her circumstances to facilitate reunification. CT Page 14539
7) The extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person, or by economic circumstances of the parent.
As discussed above, there was no unreasonable interference by third parties or economic circumstances that prevented reunification.
CONCLUSION
Based upon the foregoing findings, the court determines that it is in the best interest of Emmanuel K. for a termination of parental rights to enter with respect to his father, John S., and his mother, Kristen K. Accordingly, the court grants the termination petition. The court farther orders that the Commissioner of DCF is appointed statutory parent of Emmanuel for the purpose of securing an adoptive family. The Commissioner shall file with this court no later than 90 days following the date of judgment a written report of efforts to effect such permanent placement and file further reports as are required by state and federal law.
It is so ordered.
Carl J. Schuman Judge, Superior Court